IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**RUTH ANN "MISSY" VANDINE,**

    Plaintiff,

    v.                               Case No.: 4:14 CV 00371

**J. R. MOORE, JR., MONTGOMERY COUNTY
TAX ASSESSOR COLLECTOR;
TAMMY MCRAE, CHIEF DEPUTY OF
OPERATIONS;
THE MONTGOMERY COUNTY
TAX OFFICE; and
THE MONTGOMERY COUNTY CIVIL
SERVICE COMMISSION;**

    Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff, **Ruth Ann VanDine, ("VanDine")** by and through her undersigned attorney, complaining against the Defendants, **J. R. Moore, Jr., Montgomery County Tax Assessor Collector, Tammy McRae, Chief Deputy of Operations, the Montgomery County Tax Office, and Montgomery County Civil Service Commission,** for damages and other relief under the Age Discrimination in Employment Act, 29 U.S.C. Section 623(a) and (d), and review of her termination and grievance under Texas Local Government Code, Section 158.12, alleges as follows:

### I. THE PARTIES, JURSIDICTION AND VENUE

    1.    The Plaintiff, Ruth "Missy" VanDine ("VanDine" or "Plaintiff") is an individual residing in Montgomery County, Texas, formerly employed by Montgomery County as a civil servant in the Montgomery County Tax Office (the "Tax Office").

2.	Defendants Tammy McRae ("McRae") and J. R. Moore, Jr. ("Moore") are individuals residing in Montgomery County, Texas.  Moore is the elected County Tax Assessor-Collector, and McRae is his Chief Deputy, employed in the Tax Office.  McRae and Moore were Plaintiff's ultimate supervisors at all times relevant to this Complaint.

3.	Defendant Montgomery Civil Service Commission (the "Commission") is an entity created by the Montgomery County Commissioner's Court with its principal office in Montgomery County, Texas, charged with establishing and enforcing rules under Texas Local Government Code, Section 158.009, including, "matters relating to the selection of county employees and the procedural and substantive rights, advancement, benefits, and working conditions of county employees."

4.	This action is before the Court on federal question jurisdiction. 28 U.S.C. § 1331. Specifically, Counts I and II of Plaintiff's Complaint assert causes of action under the ADEA, 29 U.S.C. 623 (a) and (d) which provides for federal question jurisdiction.

5.	Additionally, the Court has supplemental jurisdiction over Plaintiff's supplemental claim of unlawful termination, Count III, pursuant to 28 U.S.C. 1367, because the improper decision upholding the Plaintiff's termination is so related to the discrimination and retaliation claims in the action within the original jurisdiction of the Court that they form part of the same case or controversy.

6.	Venue is proper because Plaintiff alleges that the facts and circumstances giving rise to her causes of action occurred within the jurisdiction of this Court. 28 U.S.C. §§ 124, 1391.

7.	Upon information and belief, at all relevant times to this Complaint, the employer in question, Montgomery County, employed approximately 2000 employees.

## II.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Ms. VanDine has complied with all of the administrative prerequisites necessary to bring this action.

9. On or about September 9, 2013, Plaintiff initiated a timely administrative complaint and filed a charge of age and retaliation discrimination against Defendant with the Harris County office of the Equal Employment Opportunity Commission ("EEOC").

10. Defendants were duly notified about Plaintiff's administrative complaints and responded to her allegations.

11. Plaintiff timely appealed her May 1, 2013 termination of employment to the Civil Service Commission, and timely demanded a grievance hearing on May 10, 2013.

12. On or about October 7, 2013, after Defendants became aware of Plaintiff's EEOC Charge, the Commision set her grievance hearing for October 11, 2013.

13. Plaintiff's grievance hearing did not result in a written order in October 2013 or thereafter, and no order or decision was ever mailed to Plaintiff or her representative concerning the results of the hearing.

14. On or about November 12, 2013, Plaintiff asked the EEOC to issue her a right-to-sue notice.

15. Pursuant to her request, on or about November 15, 2013, by regular mail, EEOC issued a Notice of Right to Sue on Plaintiff's EEOC complaint.

16. Plaintiff received that Notice on November 16, 2013, or later.

17. This complaint is filed within 90 days after Plaintiff received the Notice of Right to Sue on her EEOC complaint.

18. On or about February 11, 2014, Plaintiff requested a final decision on the termination of employment and the grievance hearing that was held by the Commission. She received a copy of that decision by email on February 11, 2014.

19. This Complaint is filed within 30 days of Plaintiff's receipt of the Commission's decision on her grievance.

20. Plaintiff has exhausted all available administrative remedies that may be conditions precedent to bringing this action.

### III.   FACTS CENTRAL TO PLAINTIFF'S CLAIMS

21. Ms. VanDine is over 40 years of age; her birth year is 1964.

22. On June 13, 2005, Ms. VanDine began her employment with the Tax Office, which was operated by Defendant Moore. She was hired as a full-time Deputy Specialist (tax clerk), working primarily in the main office of the Tax Assessor-Collector, in Conroe, Texas.

23. On or about August 2009, Defendant McRae began working in the Tax Office, and became Ms. VanDine's immediate supervisor.

24. Ms. VanDine received favorable reviews and was promoted to Deputy Specialist III on or about July 2010.

25. On or about August 2010, Ms VanDine was promoted to the position of Relief Manager, a position designed to provide additional support to the branch offices of the Tax Office, providing oversight and assistance to the clerks when the Branch Manager was out to lunch or on vacation, and receiving on-the-job training in how to manage a branch office. During the hours, days, weeks and months when the Relief Manager was not providing relief, Ms. VanDine's designated duties involved assisting taxpayers with motor vehicle and property tax transactions, training new employees, and researching property tax accounts for taxpayers.

26. On September 26, 2011, Ms. VanDine became a Registered Texas Collector ("RTC certified") by the State of Texas.

*Failure to Select Ms. VanDine for Promotion*

27. On February 15, 2013, Ms. VanDine was informed that another clerk, Vicki Willis ("Willis"), was selected for a position that had previously been promised to Ms. VanDine by Defendant Moore. At the same time, she was informed that the position that Willis was vacating, the Collections Supervisor position, was to be filled by Kimberly Roe ("Roe"), a white female under 40.

28. Ms. VanDine was disappointed that she did not receive the promotion that Willis received, as she had been promised that position, however, the location was not ideal for Ms. VanDine. Additionally, she believed that Willis was well-qualified for the position and was pleased for her.

29. Ms. VanDine was surprised at the Collections Supervisor promotion. Prior to the announcement of the promotion, she was unaware of the position opening. Despite County procedures requiring internal postings, the position was never posted, so Ms. VanDine, like other employees, never had an opportunity to apply for the position.

30. Plaintiff was more qualified for the position and would have applied if given the opportunity. She and other clerks had trained Roe concerning all of the duties of the position. Moreover, the Collections Supervisor position specifically required RTC certification. Ms. VanDine held the requisite RTC certification; Roe had no such certification. Roe was not qualified for the position.

31. Within a few days of the announcement of the Collections Supervisor promotion, Ms. VanDine called Linda Hayden ("Hayden"), her immediate supervisor at the Woodlands

Branch, where she was then assigned. Plaintiff complained to Hayden that she and other well-qualified relief managers over 40 were not allowed to apply, nor considered for the position. She also complained that the selected candidate was under 40 and not qualified, concluding age discrimination had occurred. Hayden did not request that Plaintiff put her complaint in writing, nor did she direct her to report her complaint to anyone else in her chain of command, or to Human Resources.

32.   Ms. VanDine elected to complain to Hayden because of her fear of McRae. She was aware that McRae systematically terminated employees who complained. Ms. VanDine was aware and had personal knowledge of some of McRae's tactics of fear, intimidation, and reprisal. Ms. VanDine was concerned that if she complained directly to McRae, she would lose her job for complaining about the Collections Supervisor position.

33.   Similarly, Ms. VanDine had knowledge of former Tax Office employees being intimidated or terminated immediately following their complaints to Human Resources. Based on this disappointing track record, and the fear of reprisal, Ms. VanDine elected not to raise the issue with Human Resources.

34.   Montgomery County Employee Policy Manual does not mandate that such complaints be directed to any one individual.

*Plaintiff's Retaliatory Discharge*

35.   Shortly after her complaint to Hayden, on or about April 23, 2013, Ms. VanDine received a letter from McRae, with false allegations concerning her conduct at the branch office on February 15, 2013. In particular, McRae accused Plaintiff of "storming around" because of the news of Ms. Willis's promotion to Branch Manager, and even ripping a sign off of the refrigerator, allegedly in anger. The letter warned that she would be disciplined, up to termination, and demanded a written response. Ms. VanDine was shocked at the allegations

contained in the letter and knew them to be false.  Ms VanDine did not "storm around" or otherwise behave in an unprofessional manner, and she did not remove the sign from the refrigerator.  Ms. VanDine proceeded to put together a written response to the letter, as demanded in McRae's letter.

36. In connection with her response, Ms. VanDine approached some of the deputies at the branch office and asked them for their recollection of the events, and then asked them if they were willing to write brief, truthful statements regarding the same.  Each clerk she spoke to agreed that the allegations were false, but few agreed to write any statement, for fear of reprisal by McRae.  Ms. VanDine was able to obtain two statements which substantiated her defense, and also was able to determine the name of the clerk who removed the sign from the refrigerator while cleaning it.

37. Ms. VanDine then submitted a letter to Defendant Moore, demonstrating that she had not conducted herself in the manner alleged, and gently calling into question McRae's behavior and motivation.  Defendant Moore was out of town when Plaintiff's letter arrived, and Defendant McRae intercepted and opened the letter.  McRae became upset by Plaintiff's response to McRae's unfounded attack, and McRae showed the letter and its contents to Tax Office employees who had no need for the information.  On that day, she also declared that she would terminate Ms. VanDine.

38. Ms. VanDine was summoned to a meeting with Defendant Moore on May 1, 2013, and was told at the beginning of the meeting that she was being terminated because of "insubordination."  Ms. VanDine disagreed that she was insubordinate, and assured Moore that she had never disobeyed an order of his, or refused to do any lawful act.  Instead, Moore alleged that Ms. VanDine's merely approaching the clerks in the branch office constituted

"insubordination." Moore failed to comment on the fact that employees had voluntarily provided written statements demonstrating that the underlying allegations by McRae were false.

39. There exists no policy or procedure in the Tax Office or in the Montgomery County regulations that specifically prohibits employees from speaking to one another, or prohibits an employee from defending herself from false allegations. Such a policy would violate the most basic of individual rights.

40. Moore told Plaintiff that she was terminated that day, and gave her an "HR Form 12" showing termination for Tax Office Rules 1, 19, 21, and 23. Plaintiff spoke with Defendant Moore for a few minutes, but was unable to change his mind regarding termination. Despite the fact that his decision was already made, Ms. VanDine was then given 24 hours to respond in writing.

41. On May 2, 2013, Ms. VanDine responded in writing to the termination notice that she received on May 1, 2013. The notice was vague and the rules cited did not appear to pertain to the allegations that had been communicated earlier, but Plaintiff attempted to respond. Among other things, she continued to seek information that would allow her to respond to the allegations more fully.

42. On May 2, 2013 Defendant Moore terminated Ms. Van Dine changing the reasons for termination once again.

43. The May 2, 2013 notice to Plaintiff informed her that she was terminated effective May 1, 2013, for statements that she allegedly made during her interview on May 1, 2013, unrelated to the April 23 allegations, and taken completely out of context.

44. More specifically, during the May 1, 2013 meeting with Moore and others, Ms. VanDine reported that a certain branch was failing to follow the "Scofflaw" procedure. Just one week prior to the May 1 meeting, Ms. VanDine had noticed the clerks in a certain branch office

were failing to check information to determine whether the motor vehicle registration customer were delinquent on any property taxes before issuing the requested motor vehicle registration. Failing to complete the check would result in a faster processing time, but a failure to follow the Tax Office Procedures.  When she confronted the Branch Manager of the office, that manager (Plaintiff's supervisor for the duration of her assignment there) admitted to Plaintiff that she also refused to check the Scofflaw databases.  In her conversation of May 1, Ms. VanDine clearly stated to Moore that she always followed the Scofflaw policies, but felt hopeless to correct the Branch Manager in the situation.   This was an event that Ms. Van Dine brought up to Moore for the first time on May1, 2013, because he was out of the office from the time it occurred a week prior, until the afternoon of May 1.  Ms. VanDine did not feel comfortable sharing this issue with McRae in the intervening week, or even at the May 1 meeting, because of McRae's misuse of her authority in the past.  Moore then misconstrued the information and falsely claimed that Ms. VanDine intended not to follow Scofflaw procedures, and intended not to report others when they failed to do so.  Nothing could be further from the truth:  Ms. VanDine voluntarily reported this offense at the meeting, and she never said she would not follow Tax Office policies or procedures.

     45.    The reason for Ms. VanDine's termination was a moving target, and she was completely unable to defend herself against false and frivolous allegations.

     46.    Ms. VanDine has observed similar treatment by McRae, with Moore's concurrence, in particular with the older workers, which has had a chilling effect on the employees, keeping them from defending themselves or others against false accusations.

     47.    The Tax Office opposed Ms. VanDine's request for unemployment compensation, and it was denied, causing extreme burden on her family's finances.  Ms. Van Dine has been

unable to obtain employment following her termination, despite regular and frequent applications for open positions.

*Further Retaliation by the Civil Service Commission*

48. On May 10, 2013, Ms. VanDine timely filed a grievance and request for hearing.

49. Despite the requirement in the Montgomery County Civil Service Regulations that the Civil Service Commissioners attempt to set a date to hear the grievance within seven (7) business days of receiving the employee's notice that she wishes to file a grievance, the Civil Services Commissioners failed to set the grievance for hearing in May, June, July, or August, or even September.

50. On Sept 19, 2013, with no response to her grievance by the Commission, Ms. VanDine filed her EEOC Charge. In her Charge, she alleged age discrimination based upon the improper selection of Roe for the position of Collections Supervisor, failing to post the position and failing to consider other, better qualified over 40 candidates. Plaintiff also alleged retaliation in the handling of discipline against her, including the termination action.

51. Finally, after receiving notice that Plaintiff had filed an EEOC Complaint, on October 7, 2013, the Commission quickly scheduled a hearing on her grievance, and Plaintiff was notified of such schedule by telephone call. Immediately prior to the hearing on October 11, Plaintiff was handed a copy of a letter amending (again) the reasons for termination. Plaintiff was not allowed any additional time to investigate the new allegations, interview witnesses, or subpoena witnesses for the hearing, all of which are provided as of right under the Civil Service Regulations.

52. The hearing was not conducted in an impartial manner and rulings were arbitrary and capricious. Plaintiff was not even allowed to read a short statement she had prepared for the hearing.

53.     Following the hearing, Plaintiff did not receive any correspondence from the Tax Office or the County with a final decision on her grievance.  Finally, on February 10, 2014, she requested a copy of the final order on her grievance, and a copy was emailed to her.

54.     Despite the fact that the evidence that was controverted in the hearing, the Civil Service Commission summarily upheld the termination, with no findings of fact or conclusions of law.

55.     Ms. VanDine still has no job and she continues to suffer from stress and anxiety related to the discrimination she faced, the fear of reprisals that were an everyday occurrence, the financial stress on her family of the job loss, and the continued difficulty of obtaining employment with negative references.

## IV.  STATEMENT OF CLAIMS

### Count I:  Age Discrimination in Violation of the ADEA

56.     Plaintiff adopts and incorporates by reference paragraphs 1-55 above.

57.     Defendants unlawfully discriminated against Plaintiff on the basis of her age.

58.     The ADEA makes it unlawful for an employer to discriminate in employment on the basis of age.  29 U.S.C. § 623(a).

59.     By failing to follow its written policies, failing to post the open position, failing to consider Plaintiff for a position for which she was well qualified, and selecting a candidate under 40 who was not qualified, Defendant discriminated against Plaintiff.

60.     As a result of Defendant's violation of the ADEA, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, increased stress, depression, anxiety,

weight loss, embarrassment, damage to her professional and personal reputation, loss of past, present, and future earnings, and considerable mental distress.

### Count II: Retaliation in Violation of the ADEA

61. Plaintiff adopts and incorporates by reference paragraphs 1-55 above.

62. Defendant unlawfully retaliated against plaintiff following her protected activity.

63. The ADEA makes it unlawful for an employer to commit retaliation because of an employee engaging in protected activity; here, Plaintiff's complaint to management concerning age discrimination. 29 U.S.C. § 623(d).

64. By fabricating a nonsensical allegation against Plaintiff, then changing the allegations not once, but three times, by providing no opportunity for investigation or response, by failing to consider Plaintiff's evidence, by failing to provide an impartial hearing on her grievance in a timely manner or at all, by treating Plaintiff differently than similarly situated employees, and by repeatedly failing to follow its own procedures, Defendants retaliated against Plaintiff.

65. As a result of Defendants' violations of the ADEA, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, increased stress, depression, anxiety, weight loss, embarrassment, damage to her professional and personal reputation, loss of past, present, and future earnings, and considerable mental distress.

### Count III:
### Unlawful Termination by Civil Service Commission

66. Plaintiff adopts and incorporates by reference paragraphs 1-55 above.

67. Plaintiff's substantial rights have been prejudiced because the Civil Service Commission's decision was made through unlawful procedure, was not reasonably supported by substantial evidence, and was arbitrary and capricious.

68.     Texas Local Government Code Section 158.012 *et seq.* allows for appeal of a grievance order by Plaintiff within 30 days of the receipt of the order, and requires the Court to reverse or remand the case for further proceedings if substantial rights of the petitioner have been prejudiced because the commission's findings, inferences, conclusions, or decisions are:

    (A)  in violation of a constitutional or statutory provision;

    (B)  in excess of the commission's authority;

    (C)  made through unlawful procedure;

    (D)  affected by other error of law;

    (E)  not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole;  or

    (F)  arbitrary or capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion.

TX Local Government Code, § 158.0121.

69.     By allowing Plaintiff's termination to be based on a moving target, including items for which termination would not normally occur, by repeatedly providing no opportunity for investigation or response, by failing to give appropriate notice of its hearings, by failing to consider Plaintiff's written statement, by failing to provide an impartial hearing on her grievance in a timely manner, by failing to provide a grievance hearing until Plaintiff filed her EEOC charge, by allowing the Tax Office to terminate Plaintiff when other employees were not terminated for similar allegations, by repeatedly failing to follow its own procedures, the Civil Service Commission's order was made through unlawful procedure, not reasonably supported by substantial evidence, and was arbitrary and capricious.

70.     As a result of Defendants' violations of Plaintiff's substantial rights, Plaintiff has suffered and is continuing to suffer injuries, including, but not limited to, increased stress,

depression, anxiety, weight loss, embarrassment, damage to her professional and personal reputation, loss of past, present, and future earnings, and considerable mental distress.

## V.  REMEDIES SOUGHT

WHEREFORE, Ms. VanDine respectfully requests that the Court issue judgment granting her the following relief from Defendants:

a. A declaratory judgment that Defendants discriminated and retaliated against Plaintiff, as alleged herein;

b. An injunctive order requiring Defendants to take specific corrective action, including reinstatement and promotion, for the discrimination and retaliation of Ms. VanDine in the past and that it take appropriate steps to protect Plaintiff from further acts of discrimination and retaliation in the future;

c. An order requiring Defendants to expunge and withdraw, as if they never existed, any and all negative documentation and/or information (formal or informal) in Ms. VanDine's personnel file created after February 15, 2013, including but not limited to all attempts to terminate or otherwise discipline Ms. VanDine;

d. Back pay, including without limitation other lost benefits due to Defendants' discrimination against Plaintiff;

e. Liquidated damages in an amount equal to all other damages in lieu of punitive and compensatory damages;

f. Reasonable attorney's fees, expert witness fees, and costs;

g. Pre-judgment and post-judgment interest on all damages;

h. Such other and further relief as the Court deems just and proper; and

    i.    All other relief to which Ms. VanDine shows herself entitled to at law or in equity.

## VI.  JURY TRIAL DEMAND

Plaintiff requests a jury trial on all issues of fact and damages arising herein.

Dated:  February 14, 2014        Respectfully submitted,

/s/ lesalcarter 2/14/201412:25pm

Lesa L. Carter, Attorney-in-Charge for Plaintiff
Texas Bar No. 11795457, Fed ID No. 26263
Lesa Carter Consulting, LLC
2727 N Cotswold Manor
Kingwood, TX 77339
713-501-8401